UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

JOANNA KRUPA and TARA LEIGH PATRICK a/k/a CARMEN ELECTRA,

Plaintiffs,

- against -

TUNDIDOR, INC. d/b/a EROTICA CABARET,

Defendant.

Case No. 1:21-cv-20159-JEM

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

COME NOW, Plaintiffs, Joanna Krupa ("Krupa") and Tara Leigh Patrick also known as Carmen Electra ("Electra") (collectively referenced herein as "Plaintiffs"), by and through their undersigned attorney, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, hereby move for partial summary judgment against Defendant, Tundidor, Inc. doing business as Erotica Cabaret ("Erotica" or "Defendant") for violation of Fla. Stat. § 540.08: Right of Publicity - Unauthorized Misappropriation of Name/Likeness (Count III of Plaintiffs' Complaint) and violation of Common Law Right of Publicity - Unauthorized Misappropriation of Name or Likeness (Count IV of Plaintiffs' Complaint.)

## I. INTRODUCTION

Plaintiffs are professional models, actresses, and celebrities who seek relief from this Court for damages arising out of Defendant's unauthorized use and misappropriation of Plaintiffs' images and likenesses for the purpose of advertising, solicitation, and promotion of Erotica strip club on Defendant's social media pages. (SOMF ¶¶ 1-12.) At no time did Plaintiffs

give Defendant permission to use their images for any marketing or promotional purposes, nor did Plaintiffs consent to being associated with Defendant. *Id*. at ¶¶ 6-7. Further, at no time did Defendant contact Plaintiffs either directly or indirectly, to request permission to use Plaintiffs' images. *Id*. at ¶¶ 7, 24, 25. Plaintiffs never had any relation or contract with Defendant. *Id*. at ¶¶ 6, 24, 25, 28. Plaintiffs' images were plastered over Defendant's sexually explicit promotional material in order to generate revenue for Erotica. *Id*. at ¶ 9, 10, 29. Defendant did not deny that it misappropriated Plaintiffs' images in advertisements without Plaintiffs' consent, instead, Defendant blames RRC Agency for designing the ads for Erotica, all the while Defendant's president, James Tundidor, Jr. ("Tundidor") provided RRC Agency with the promotions occurring at Erotica on a monthly basis and Tundidor approved the ads created by RRC Agency. *Id*. at ¶¶ 14-22.

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). "A mere scintilla of evidence" or conclusory allegations and speculation will not defeat a motion for summary judgment. *Young v. City of Palm Bay, Fla*., 358 F.3d 859, 860 (11th Cir. 2004). The moving party has the initial burden of showing the absence of a genuine

issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e).

### III. ARGUMENT

**A. Plaintiffs are Entitled to Summary Judgment on COUNTS III and IV (Violation of Fla. Stat. § 540.08: Right of Publicity - Unauthorized Misappropriation of Name/Likeness and Violation of Common Law Right of Publicity - Unauthorized Misappropriation of Name or Likeness)**

Count III of Plaintiffs' Complaint alleges a violation of Florida Statute § 540.08, which provides a cause of action for unauthorized publication of name or likeness. Count IV alleges a violation of the common law right of publicity, specifically, the unauthorized misappropriation of name or likeness. "Under Florida law, the elements of common law invasion of privacy - commercial misappropriation of likeness coincide with the elements of unauthorized publication of name or likeness in violation of Fla. Stat. § 540.08 and require proof of (1) use of an image or likeness of another, (2) for a commercial or advertising purpose, (3) without consent." *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1220 (M.D. Fla. 2002) (citing *Heath v. Playboy Enters., Inc., Supp.* 1145, 1147–48 (S.D. Fla. 1990).

> As excerpted in *Lane*, Fla. Stat. § 540.08 provides in pertinent part:
>
> **Unauthorized publication of name or likeness** ... No person shall publish, print, display or otherwise publicly use for purposes of trade or for any

> commercial or advertising purpose the name, portrait, photograph, or other **likeness** of any natural person without the express written or oral consent to such use given by ... [s]uch person …
>
> In the event the consent required ... is not obtained, the person whose name, portrait, photograph, or other **likeness** is so used ... may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages.

*Id*. at 1212 (emphasis added).

Section 540.08 of Florida Statutes "is designed to prevent the unauthorized use of a name [or likeness] to directly promote the product or service of the publisher." *Bluestar Entm't Int'l, Inc. v. Cooper,* No. 07-23245-CIV, 2008 WL 11333068, at *4 (S.D. Fla. July 18, 2008); *Burciaga v. Gold Club Tampa, Inc.,* No. 8:16-CV-790-T-27JSS, 2016 WL 9526567, at *4 (M.D. Fla. Dec. 28, 2016) ("Section 540.08 of the Florida Statutes prohibits the unauthorized use of a person's name or likeness for 'trade, commercial, or advertising purposes'.")

Here, Erotica has done exactly that - use Plaintiffs' images for commercial or advertising purpose without Plaintiffs' consent. Neither Plaintiff, nor anyone acting on either one of the Plaintiffs' behalf, has ever provided written or oral consent to Erotica or even RRC Agency to use Plaintiffs' images for Erotica's advertising. (SOMF ¶¶ 6, 7, 24, 25, 27, 28.) Tundodor, being a president and employee of Erotica retained RRC Agency to maintain Erotica's social media pages during 2017 and 2018, but Tundidor had the administrative rights to the social media pages and was able to access said pages. More importantly, Tundidor emailed RRC Agency the promotions happening at Erotica for each month and RRC Agency then posted the said promotions on Erotica's social media pages after being told by Tundidor to do so. *Id*. at ¶¶

13-17.

Tundodor and RRC Agency discussed monthly marketing strategies for Erotica and Tundidor emailed RRC Agency the information he wanted in the advertisements. RRC Agency would then email Tundidor back with draft promotions and Tundidor would respond back with whether he approved the ads or where any revisions were required. *Id*. at ¶ 18. The same occurred with the subject advertisements depicting Plaintiffs' images. *Id*. at ¶¶ 19, 20. If there was ever an issue with any graphic work prepared by RRC Agency, Tundidor would instruct RRC Agency to correct it, or in this case, would delete the content himself from Erotica's social media pages. *Id*. at ¶¶ 21, 26.

Throughout RRC Agency's involvement with Erotica, RRC Agency relied on Tundidor to create the advertisements for Erotica and both worked together during meetings to come up with said promotions. *Id*. at ¶ 22. Further, although Tundidor testified that he assumed RRC Agency had authorization to use Plaintiffs' images, Tundidor never actually asked anyone where the images came from, all the while Erotica maintained a model release and had all of its dancers and special performers sign it before using their images for advertising purposes. *Id*. at ¶¶ 23, 27. Tundidor knew that Plaintiff Krupa and Plaintiff Electra never signed Erotica's model release. *Id*. at ¶ 28. Tundidor also admitted that neither he nor Erotica ever contacted Plaintiffs to get their consent to use their images for Erotica's advertising purposes. *Id*. at ¶¶ 24, 25. Plaintiffs also declared that they never provided consent to anyone to have their images used in Erotica's advertising and were never compensated for said use. *Id*. at ¶¶ 6, 8.

Plaintiffs invite this Court to review a recent summary judgment decision in an identical matter involving professional models whose images were misappropriated by adult

entertainment clubs for advertising purposes. There, the Honorable K. Michael Moore determined,

> First, it is undisputed that Defendants used Plaintiffs' images without their consent. Second, the Court must determine whether the images were used for "trade or for any commercial or advertising purposes." *Lane*, 242 F.Supp.2d at 1212 (citing *Valentine v. CBS, Inc.*, 698 F.2d 430, 433 (11th Cir.1983) (recognizing that the proper interpretation of Fla. Stat. § 540.08 requires the plaintiff to prove that the defendants used a name or likeness to directly promote a product or service).
>
> Defendants argue that the images were used to "advertise specific parties at the club, but not the club itself" and that "the instant matter presents a disputed issue as to whether the Plaintiffs' images were used to directly promote a product or service." The events and parties at the clubs are a "product or service." See *Gibson v. BTS N., Inc.*, No. 16-24548-CIV, 2018 WL 888872, at *4 (S.D. Fla. Feb. 14, 2018) (finding misappropriation where images were used as part of marketing for strip clubs). **Here, the images at issue speak for themselves. The images were publicly available on Defendants' Facebook pages and websites and are directly used to promote events which charge a fee for entry**…
>
> **Here, it is undisputed that Defendants used images of each of the Plaintiffs for the sole purpose of promoting Defendants' events and did so without any of Plaintiffs' consent**. Accordingly, Plaintiffs have satisfied the elements of misappropriation of likeness claims, and summary judgment is GRANTED in favor of Plaintiffs as to Counts III and IV.

*Taylor v. Trapeze Mgmt., LLC,* No. 0:17-CV-62262-KMM, 2019 WL 1468515, at *7 (S.D. Fla. Feb. 27, 2019) (emphasis added.)

A year prior, in another strip club image misappropriation matter, the Honorable Marcia G. Cooke of this Court also granted summary judgment in plaintiffs' favor and held,

> Defendants first argue that Plaintiffs' statements that they did not consent to Defendants' use of their images are conclusory and insufficient for summary judgment purposes. This argument is meritless. Signing a declaration that they did not provide consent is not conclusory. Plaintiffs have firsthand knowledge of whether they signed a contract with Defendants or otherwise provided an oral statement allowing Defendants to use their images. How else would Plaintiffs show the absence of a contract except through their own statement of knowledge?

> Because Defendants have come up with absolutely no evidence showing Plaintiffs *gave* their consent, I find Plaintiffs' statements in their declarations to be sufficient to show lack of consent.
>
> Defendants also argue that Plaintiffs have not shown the images were used in a manner to associate Plaintiffs specifically with Defendants' businesses, as required by Florida law. Whatever this means, Defendants' cited cases do not contain this statement of the law. Defendants correctly cite the law when they say Plaintiffs must show that Defendants used their images to directly promote a product or service. *Loft v. Fuller*, 408 So. 2d 619, 623 (Fla. Dist. Ct. App. 1981) … However, **the images themselves support Plaintiffs' statements and Defendants do not argue that they did not use the images as part of marketing their Clubs.** Defendants argue instead that because the images were already widely published on Facebook, which is where Defendants allegedly accessed the pictures, Plaintiffs have no cause of action. Defendants cite many cases for the proposition that "[r]epublication of facts already publicized elsewhere cannot provide a basis for an invasion of privacy claim." *Heath v. Playboy Enterprises, Inc.*, 732 F.Supp. 1145, 1448 (S.D. Fla. 1990). However, as Plaintiffs note, these cases are inapposite because the invasion of privacy at issue in those cases is the public disclosure of private facts. Here, Plaintiffs make a claim of misappropriation of likeness; the harm is markedly different. In misappropriation cases, "the publication is harmful not simply because [the image] is included in a publication that is sold for a profit, but rather because of the way it associates the individual's name or [her] personality with something else." *Id.* Plaintiffs have satisfied the elements of the misappropriation of likeness claims and I grant summary judgment on Counts III and IV in Plaintiffs' favor.

*Gibson v. BTS N., Inc.,* No. 16-24548-CIV, 2018 WL 888872, at *8 (S.D. Fla. Feb. 14, 2018)

(emphasis added.)

In yet another identical strip club image misappropriation matter, defendants also blamed an independent third party graphic designer for creating Defendant's advertisements, but the Honorable Timothy J. Corrigan held as follows,

> And, of course, the Florida cases make clear that the misappropriation statue [] which is 540.08, and the common law claim for unauthorized misappropriation, really are aligned. And so there's no meaningful distinction between either one of them…
>
> But to prevail on those claims, the Plaintiff must prove by a preponderance of the

7

evidence, number one, "the Defendant published, printed, displayed, or otherwise publicly used Plaintiffs' portrait, photograph, or other likenesses."

I think there's absolutely no dispute in this case that that occurred with respect to these nine Plaintiffs…

And to [defense counsel's] argument that we don't know who posted them, it doesn't appear to really matter under the statute. The Defendants published them. **They were on their web site and on their social media.**

**How they got there does not appear to really play into a cause of action under either 540.08 or [] the common law…**

**… it does not appear to me that the statute really makes any distinction as to who actually posted it or put it on to their social media** — the Defendant's social media or their web site.

And, you know, I suppose you could have a fanciful case where the Defendant was saying that we were hacked or something like that, and that's how it got there, but that — there's certainly no evidence of that in this case. And there's lots of evidence to the contrary.

So the second element is the Defendants did so for any commercial or advertising purpose. And I think that element has also been met as a matter of law by the Plaintiffs' proof. Two of the ads are explicitly commercials or advertising for certain events. But the others are certainly posted, and for commercial or advertising purpose. I just don't think there's any doubt about that. Some of them reference specific holidays and things that are designed to — for commercial and advertising reasons to suggest to the people reading them that they ought to think of the clubs as places to celebrate those occasions.

… there's just no doubt in the evidence at all that this was done for commercial or advertising purpose.

And number three, that the Defendants did not have express written or oral consent to the usages. And I also find as a matter of law that that's been proven by the Plaintiff. I will point to [corporate representative's] testimony, which we looked at this weekend, who he — all the Plaintiffs testified there was no consent given.

… and then [corporate representative] essentially confirmed that he didn't obtain any consent or permission. And there really was no contrary evidence. And [independent graphic designer] certainly wasn't to the contrary on that evidence.

8

> And so to the extent that it has to be -- to the extent that the element requires that "the Defendants did not have express" [] and it does say express — "written or oral consent to such usage" — I think that's been clearly met by the evidence as a matter of law and is undisputed. I'm also relying in granting Rule 50 relief, which I'm going to do, on Counts -- Three and Four…

*Canas, et al v. Flash Dancers, Inc., et al.*, Case No. 3:16-cv-00393-TJC-JK (M.D. Fla. Aug. 22, 2019) [Doc. 120, Transcript of Excerpt of Jury Trial, 59:2-62:9] (emphasis added.)

Therefore, Defendant's sole defense that RRC Agency posted Plaintiffs' images on Defendant's social media pages is irrelevant for the purposes of establishing Plaintiffs' Count III- violation of Fla. Stat. § 540.08: Right of Publicity - Unauthorized Misappropriation of Name/ Likeness and Plaintiffs' Count IV - violation of Common Law Right of Publicity - Unauthorized Misappropriation of Name or Likeness. What is relevant is that Plaintiffs' subject images were published on Erotica's social media pages and Tundidor specifically retained RRC Agency to post marketing material to Erotica's social media pages. Tundidor also provided RRC Agency with all the promotions that were occurring at the club on a monthly basis.

Defendant also admitted that Plaintiffs' images were used for promotional purposes and that Defendant never received any authorization to use said images. Plaintiffs have reiterated the same. (SOMF ¶¶ 6, 7, 24, 25, 27, 28, 29.) As such, there is no genuine issue of material fact in this matter. Plaintiff Krupa's image was specifically used by Erotica without authorization to promote "Something Big is Coming" and "Starting in February experience a new level of entertainment at Erotica Cabaret." *Id.* at ¶ 9. In the same vein, Plaintiff Electra's image was used by Erotica without authorization to promote "EROTICA CABARET invites you to experience the best LIVE ENTERTAINMENT in MIAMI. Join us today from 2PM-5AM." *Id.* at ¶ 10. For those reasons, summary judgment should be granted for Plaintiffs as to Counts III and IV of

Plaintiffs' Complaint.

B. **Each Plaintiff Is Entitled to Compensation of a Sum Certain for Defendant's Unauthorized Use of Their Images for Commercial Purpose**

Because Erotica had no authority or permission to use or have Plaintiffs' images appear on its social media platforms for advertising or promotional purposes, each Plaintiff is entitled to compensation at least equivalent to the fair market value, that is, a value approximating what each Plaintiff, if compelled to provide a value retrospectively, would value the sale of a single image for a single usage to this salacious and explicit buyer. (SOMF ¶¶ 11, 30, 33.) While retrospectively estimating the fair market value of use of a Plaintiff's image in a situation where an image has been misappropriated is distinct from prospective negotiation in the ordinary course, based on each Plaintiff's respective experience in the modeling and entertainment industries, and extensive experience participating in negotiations over contracts, each Plaintiff has agreed that the fair market valuation range proffered by Stephen Chamberlin aligns with what they would each value the use of their own images in light of the misappropriation by Defendant. *Id.* at ¶¶ 30-33. "Plaintiffs have sufficiently alleged that their damages are, 'at minimum,' the fair market value of their images." *Takeguma v. Freedom of Expression LLC*, No. CV-18-02552-PHX-MTL, 2021 WL 487884, at *12 (D. Ariz. Feb. 10, 2021) (another strip club image misappropriation matter;) *see also Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 256 (2d Cir. 2021), *cert. denied*, No. 21-415, 2021 WL 5434467 (U.S. Nov. 22, 2021) ("[w]e thus conclude that recovery of the fair market value of the images is a viable damages theory in this case.")

The undisputed facts establish Plaintiffs are entitled to recover actual (or compensatory) damages under Fla. Stat. § 540.08. Plaintiffs have proffered evidence of a retrospective fair market valuation for the unauthorized use of their images as a means of compensating each Plaintiff for such unauthorized use. The fair market valuation provided by Steven Chamberlin, and expressly adopted by each Plaintiff, is reasonable and should be awarded on summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter partial summary judgment in Plaintiffs' favor and against Defendant for violation of Fla. Stat. § 540.08: Right of Publicity - Unauthorized Misappropriation of Name/Likeness (Count III) and violation of Common Law Right of Publicity - Unauthorized Misappropriation of Name or Likeness (Count IV), award Plaintiffs damages under those two claims, and grant Plaintiff such further relief as justice requires.

Dated: December 17, 2021.                Respectfully submitted,

THE CASAS LAW FIRM, P.C.

By: */s/ Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757
mila@talentrights.law
80 S. W. 8th St., Suite 2000
Miami, FL 33130
Phone: (786) 671-3244
Fax: (786) 671-3243
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 17, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties in this case.

                                                  THE CASAS LAW FIRM, P.C.

                                                  By: */s/ Ludmila Khomiak*
                                                  Ludmila Khomiak, Esq.
                                                  Florida Bar No.: 91757